# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00962-RM-NYW

BRENT J. MORSE,

    Plaintiff,

v.

BAKKEN OIL, LLC,
CORE CONSULTING, LLC, and
NORTHERN OIL & GAS, INC.,

    Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Nina Y. Wang

This civil action is before the court on Defendant Northern Oil & Gas, Inc.'s ("Northern") Motion to Dismiss Plaintiff's Fourth and Fifth Claims for Relief ("Northern Motion to Dismiss") [#21, filed June 15, 2015] and Defendant Bakken Oil, LLC's ("Bakken") Motion to Dismiss ("Bakken Motion to Dismiss"). [#25, filed June 17, 2015] (collectively, "Motions to Dismiss").

These matters were referred to the undersigned Magistrate Judge pursuant to the Order of Reference dated May 6, 2015 [#26] and memoranda dated June 16 and 17, 2015 [#23, #27]. After carefully considering the Motions and related briefing, the entire case file, and the applicable case law, I respectfully RECOMMEND that the Motions to Dismiss be GRANTED.

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Brent J. Morse initiated this action on May 6, 2015, by filing a Complaint naming Bakken, Northern, and CORE and asserting the following five claims arising out of negotiations for the acquisition of certain oil and gas rights held by Plaintiff in Montana: (1) Breach of Contract as to Northern; (2) Breach of Implied Warranty of Authority as to CORE; (3) Negligent Misrepresentation Regarding Scope of Authority as to CORE and Bakken; (4) Deceit Based on Fraud Regarding Promised Future Performance as to Northern, Bakken, and CORE; and (5) Negligent Misrepresentation Regarding Promised Future Performance as to Northern, Bakken, and Core. [#1]. Plaintiff seeks monetary damages in the amount of $717,187.50 with regard to his First Claim for Relief asserted against Northern, plus consequential damages, incidental damages, and pre- and post-judgment interest. [*Id.* at 11]. He moves in the alternative for damages against CORE in the amount of $717,187.50 with regard to his Second Claim for Relief, plus consequential damages, incidental damages, and pre- and post-judgment interest. [*Id.*] Finally, and in the alternative, Plaintiff seeks damages against all three Defendants, jointly and severally, on the Third, Fourth, and Fifth Claims for Relief, plus pre- and post-judgment interest. [*Id.*] The court has jurisdiction pursuant to 28 U.S.C. § 1332.

The following allegations are taken from the Complaint and deemed true for the purposes of this Recommendation and the court's consideration of the Motions to Dismiss. Plaintiff alleges Bakken and CORE are agents of Northern, and that CORE is an agent of Bakken. [*Id.* at ¶¶ 10, 11]. CORE is comprised of a single member, Cori Schock ("Ms. Schock"). [*Id.* at ¶ 3].

CORE, through Ms. Shock, contacted Plaintiff on August 27, 2014, regarding Northern's interest in obtaining "paid up" oil and gas leases "with respect to approximately 480 acres of

Plaintiff's real property in Richland County, Montana" ("Oil and Gas Leases"). [*Id.* at ¶ 12]. The following day, CORE contacted Plaintiff by email to offer "specific material terms authorized 'from the source' at Northern for the acquisition of the Oil and Gas Leases." [*Id.* at ¶ 13; #1-1 at 4-5]. Plaintiff alleges that he thereafter engaged in substantial correspondence with CORE for four months with respect to Northern's interest in the Oil and Gas Leases. [*Id.* at ¶ 14; #1-1]. During the course of this correspondence, Plaintiff asserted a counterproposal regarding the material terms. [*Id.* at ¶ 15]. On September 12, 2014, CORE represented it was authorized by Northern to "go with [Plaintiff's] proposed terms,' specifically with respect to an agreed-upon per-net mineral acre price, a three-year duration, and a 20% royalty interest." [*Id.* at ¶ 16; #1-1 at 3]. On November 7, 2014, CORE represented to Plaintiff that a title search was determining the answer to a question on "the total net mineral acres," which was holding up final approval for the leases. [*Id.* at ¶ 17; #1-1 at 1]. The title work was completed and the total net mineral acres were confirmed on November 13, 2014. [*Id.* at ¶18; *id.*]. Northern then proposed to modify the agreement to extend the lease from three to four years, to which Plaintiff agreed. [*Id.* at ¶ 19; *id.*].

On November 14, 2014, CORE forwarded the formal, recordable leases to Plaintiff, along with payment vouchers and instructions that Northern would make payment by check within thirty business days after Plaintiff executed and returned the formal leases to CORE. [*Id.* at ¶ 20; #1-1 at 7-34]. On November 19, 2014, Plaintiff confirmed receipt of the Lease Documents and executed and returned them. [*Id.* at ¶ 21; #1-1 at 36]. Three days later, Bakken notified Northern that Plaintiff had executed and returned the Lease Documents, and Northern responded and confirmed it would wait until the turn of the year to "close" on the Oil and Gas Leases. [*Id.*

at ¶¶ 22, 23; #1-1 at 42-44]. On December 3, 2014, Plaintiff contacted CORE to ask whether Northern intended to remit lease payments in late 2014, or, "given the number of non-business days in December, January 2015," and CORE confirmed that payment was scheduled for January 2015. [*Id.* at ¶ 24; #1-1 at 36].

When he had not received payment by mid-January 2015, Plaintiff contacted CORE and Bakken, and attempted to speak directly with Northern, regarding the status of the payments. [*Id.* at ¶ 25]. Following correspondence with CORE and Bakken throughout January and February 2015, Plaintiff learned that Northern, as a result of market conditions, had decided not to move forward with the Lease Documents. [*Id.* at ¶ 27; #1-1 at 48-50]. Plaintiff subsequently initiated this civil action.

Plaintiff effected service for Northern on May 11, 2015 [#5], for Bakken on May 13, 2015 [#12], and for CORE on June 1, 2015 [#20]. On June 15, 2015, Northern filed its Motion to Dismiss [#21] and a motion for an extension of time to file an Answer as to the first claim for relief [#22]. On June 17, 2015, Bakken filed its Motion to Dismiss [#25]. On June 23, 2015, CORE filed an Answer through Ms. Schock. [#29]. On June 24, 2015, this court struck CORE's Answer and instructed Ms. Schock, who did not represent that she was an attorney, to "retain counsel who shall file an Answer or otherwise respond to the Complaint on Core Consulting, LLC's behalf on or before July 22, 2015." [#31]. This court further warned Ms. Schock that "failure to do so may result in the Clerk of the Court's entry of default as to this Defendant." [*Id.*]

On July 9, 2015, Plaintiff filed a Response to the Northern Motion to Dismiss [#37] and a Response to the Bakken Motion to Dismiss [#38]. On July 23, 105, Bakken filed a Reply [#40] and Northern filed a Reply [#41].

On July 15, 2015, Northern filed an Answer to the Complaint and asserted a crossclaim for breach of fiduciary duty as to Bakken. [#39]. On July 30, 2015, Northern filed a First Amended Answer adding CORE as a crossclaim defendant with respect to the cross claim for breach of fiduciary duty. [#43, #44]. On August 18, 2015, Bakken filed an Answer to Northern's Amended Crossclaims and asserted Counterclaims to Northern's Amended Crossclaims for breach of fiduciary duty and breach of contract. [#47]. Northern filed an Answer to Bakken's Counterclaims on September 8, 2015. [#48].

On July 31, 2015, this court held a Scheduling Conference and entered a Scheduling Order. [#45, #46]. To date, no attorney has entered an appearance on behalf of CORE, CORE has not re-filed an Answer to the Complaint or filed an Answer to Northern's First Amended Answer, and has not otherwise defended itself in this action. Plaintiff also has not moved for entry of default against CORE. The instant Motions, and this Recommendation, do not address Plaintiff's claim for breach of contract against Northern; claims two, three, four, and five against CORE; Northern's Amended Crossclaim for breach of fiduciary duty against Bakken and CORE; or Bakken's counterclaims to Northern's Amended Crossclaim for breach of fiduciary duty and breach of contract.

**STANDARD OF REVIEW**

Under Rule 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule

12(b)(6), the court must "accept as true all well-pleaded factual allegations … and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted). "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

Plaintiff's claim for fraud implicates Federal Rule of Civil Procedure 9(b), which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind

may be alleged generally." Fed. R. Civ. P. 9(b).[1] Rule 9(b) must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the procedural requirements for pleading a claim in federal court. *See Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997) (citing *Seattle-First Nat'l Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir. 1986)). Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "mean[s] what it sa[ys]." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168 (1993).

## ANALYSIS

**I.   Applicable Legal Standard**

As an initial matter, this court must determine which law applies to the three claims implicated by the Motions to Dismiss. These claims are styled as "Negligent Misrepresentation Regarding Scope of Authority," "Deceit Based on Fraud Regarding Promised Future Performance," and "Negligent Misrepresentation Regarding Promised Future Performance" ("Negligent Misrepresentation and Fraud Claims"). Without explanation, the Parties cite to Montana state law in their briefs.

A federal court exercising diversity jurisdiction, as here, applies the choice of law principles of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941). *See also Security Service Federal Credit Union v. First American Mortgage Funding, LLC,* 861 F. Supp. 2d 1256, 1267 (D. Colo. 2012). Colorado has adopted the Restatement (Second) of

---

[1] In diversity cases, such as this one, state law determines the substantive elements of fraud, but the party asserting fraud must plead those elements with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure. *Weatherhead v. Globe Intern'l, Inc.,* 832 F.2d 1226, 1228 (10th Cir. 1987).

7

Conflict of Laws approach to conflict of laws issues for tort claims. *Security Service Federal Credit Union,* 861 F. Supp. 2d at 1267 (citing *Dworak v. Olson Const. Co.*, 551 P.2d 198, 199 (Colo. 1976)). Under the Restatement (Second) of Conflict of Laws, the court determines the rights and liabilities of the parties with respect to an issue in tort "by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Restatement (Second) of Conflict of Laws § 145(1) (October 2015).[2] In tort or fraud actions, the court considers the following contacts in applying the general policy considerations of § 6: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id.* at § 145(2). *See also Hamilton v. Cunningham*, 880 F. Supp. 1407, 1413 (D. Colo. 1995). The court is to evaluate these contacts "according to their relative importance with respect to the particular issue." Restatement (Second) of Conflict of Laws § 145(2) (October 2015).

The subject of the dispute is the Oil and Gas Leases, which concern 480 acres of Plaintiff's real property in Richland County, Montana. [*Id.* at ¶ 12]. Plaintiff asserts that Bakken and Northern are liable under the theory of *respondeat superior* for the Negligent Misrepresentation and Fraud Claims based on CORE's allegedly false representations to

---

[2] Section 6 counsels the court to consider the following factors in selecting the applicable rule of law: "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied." Restatement (Second) of Conflict of Laws § 6(2).

Plaintiff. [*Id.* at ¶¶ 46, 47, 52]. It appears from the Complaint that CORE's single member, Ms. Schock, acted as liaison between Northern and Bakken and Plaintiff, and was responsible for corresponding with Plaintiff with regard to the Oil and Gas Leases. [*Id.* at ¶¶ 12-14; #1-1 2-5]. Bakken and CORE are Montana limited liability companies. [*Id.* at ¶¶ 2, 3]. Northern is a Minnesota corporation. [*Id.* at ¶ 4]. Plaintiff is domiciled in Colorado. [#1 at ¶ 1]. Northern ultimately determined not to proceed with the Oil and Gas Leases [#1-1 at 48-50], which decision Bakken and CORE conveyed to Plaintiff. Given that the dispute arises out of the use of real property in Montana, the damages Plaintiff seeks derive from the use of this property, Bakken and CORE are domiciled in Montana, Plaintiff seeks to impute liability to Bakken and Northern through alleged misrepresentations and fraudulent actions undertaken by CORE, and, finally, the Parties appear to agree that Montana law should govern Plaintiff's tort claims, I find that Montana has the most significant relationship to the parties and occurrence herein at issue. Accordingly, I proceed with the application of Montana law as to whether Plaintiff has stated a claim as to Bakken in his Third, Fourth, and Fifth Claims for Relief, and as to Northern in his Fourth and Fifth Claims for Relief.[3]

## II.   Negligent Misrepresentation and Fraud Claims

Plaintiff asserts the following claims as to Bakken: Negligent Misrepresentation Regarding Scope of Authority; Deceit Based on Fraud Regarding Promised Future Performance; and Negligent Misrepresentation Regarding Promised Future Performance. As to Northern, Plaintiff asserts the claims for Deceit Based on Fraud Regarding Promised Future Performance

---

[3] While I apply Montana substantive law to these three claims, I apply the law of this forum in considering whether the Complaint has been properly pled under the Federal Rules of Civil Procedure. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 437 (2010).

and Negligent Misrepresentation Regarding Promised Future Performance.[4]  The gravamen of the Complaint is that Bakken and Northern are liable through the theory of *respondeat superior* for CORE's representation that it was authorized by Northern to negotiate the Oil and Gas Leases and for its promise to Plaintiff that Northern agreed to be bound by the terms of the Oil and Gas Leases; and that Bakken and Northern either had knowledge at the relevant time that Northern did not intend to be so bound, or reasonably should have known that Northern did not intend to be so bound.  *See* [#38 at 5].

    A.    <u>Legal Standard</u>

The Montana Supreme court has adopted the definition of negligent misrepresentation as set forth in the Restatement (Second) of Torts § 552.  *Mattingly v. First Bank of Lincoln*, 285 Mont. 209, 215 (Mont. 1997).  To state a claim for negligent misrepresentation under Montana law, the plaintiff must allege:

> a) the defendant made a representation as to a *past* or *existing* material fact; b) the representation must have been untrue; c) regardless of its actual belief, the defendant must have made the representation without any reasonable ground for believing it to be true; d) the representation must have been made with the intent to induce the plaintiff to rely on it; e) the plaintiff must have been unaware of the falsity of the representation; it must have acted in reliance upon the truth of the representation and it must have been justified in relying upon the representation; f) the plaintiff, as a result of its reliance, must sustain damage.

*Id.* (quoting *Kitchen Krafters v. Eastside Bank of Montana*, 242 Mont. 155, 165 (1990) (emphasis in original)).  "A threshold element in any claim for negligent misrepresentation is that the defendant make a representation as to a past or existing material fact upon which the claim is based." *Id.*

---

[4] Plaintiff also asserts a breach of contract claim as to Northern, but that claim is not at issue here.

To state a claim for fraud under Montana law, the plaintiff must allege:

1. A representation; 2. Falsity of the representation; 3. Materiality of the representation; 4. Speaker's knowledge of the falsity of the representation or ignorance of its truth; 5. Speaker's intent it should be relied upon; 6. The hearer's ignorance of the falsity of the representation; 7. The hearer's reliance on the representation; 8. The hearer's right to rely on the representation; and 9. Consequent and proximate injury caused by the reliance on the representation.

*Krone v. McCann*, 197 Mont. 380, 387 (1982) (citation omitted). *See also Fossen v. Fossen*, 372 Mont. 175, 177 (2013) (affirming order dismissing third party complaint for failure to plead fraud with sufficient particularity to give adequate notice). Under Montana law, the tort of deceit applies to "[o]ne who willfully deceives another with intent to induce that person to alter the person's position to the person's injury or risk," and includes the act of making a promise without any intention of performing it. Mont. Code. Ann. 27-1-712(1) and (2)(d).

B.  Allegations

Plaintiff asserts the following allegations in support of his claims: CORE conveyed to him that it was "representing" Northern and that Northern was "interested in obtaining a lease on [Plaintiff's] mineral interest" on certain lands; CORE made "offer[s]" on Northern's behalf; CORE represented it had obtained "authorization" from Northern "to go with [Plaintiff's] requested terms"; CORE stated it was "confirming payment" on behalf of Northern as "scheduled." [#1 at ¶¶ 42, 52, 60].[5]

---

[5] Plaintiff alleges that CORE acted as an agent of Bakken in negotiating the Oil and Gas Leases and, for the purposes of their Motions to Dismiss, Bakken does not contest that characterization [#26 at 3 n.1] and Northern assumes such a relationship existed [#21 at 3-4]. Likewise, this court will assume for the purposes of this Recommendation that CORE was an agent of Bakken, and Bakken an agent of Northern, during the events giving rise to the Complaint.

Plaintiff's exhibits[6] show that on November 13, 2014, Bakken's representative, Josh Cole, confirmed with Adam Dirlam, Northern's Vice President of Operations, that Northern wished to pursue the Oil and Gas Leases. [#1-1 at 44-45]. Mr. Dirlam confirmed that Northern "[w]ill do it for four years, based on the rig activity that has fluctuated since we last spoke on this." [#1-1 at 44]. CORE conveyed Northern's request for the four-year term to Plaintiff, who accepted the modification. [#1-1 at 37]. Plaintiff signed the Oil and Gas Leases six days later, on or about November 19, 2014, and returned the leases to CORE. [#1-1 at 36]. Plaintiff thereafter inquired, or was perceived as inquiring, whether Northern could pay him under the Oil and Gas Leases after the turn of the year. [#1-1 at 43]. As of November 21, 2014, Northern knew that Plaintiff had signed and returned the leases, and agreed to remit payment to Plaintiff in 2015. [#1-1 at 42, 43].

On December 3, 2014, Plaintiff asked, "[i]s Northern set up to mail me a check after Jan 1 for the leases we already signed and returned??" [#1-1 at 36]. CORE responded through Ms. Schock the same day "[c]onfirming payment is scheduled for next year." *Id.* Not until two days later, on December 5, 2014, did Northern indicate its reluctance to move forward with the Oil and Gas Leases. When Mr. Cole asked Mr. Dirlam if he would like originals of Plaintiff's signature, Mr. Dirlam responded, "we may need to put on the shelf indefinitely given oil prices." [#1-1 at 51]. Bakken's representative, Mr. Cole, immediately replied, "[o]bviously this could be an ugly situation given you have a signed lease, so I hope we get some firm guidance on this."

---

[6] "In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits." *Indus. Constructors Corp. v. U.S. Bureau of Reclamation,* 15 F.3d 963, 964–65 (10th Cir. 1994).

[#1-1 at 50]. Mr. Dirlam then wrote, "[Northern's board of directors] have put a freeze on anything that is outside of the core, we are out on this one." [*Id.*]

### C. Bakken Motion to Dismiss

Bakken argues that Plaintiff has failed to plead misrepresentation or fraud because, despite the asserted claims, there are no allegations as to what facts CORE or Bakken misrepresented or that either Defendant knew such facts were untrue at the time they were represented. [#26]. Bakken also argues that Plaintiff has stated no damages as follows: either Plaintiff entered into a valid agreement with Northern, which can be enforced to make Plaintiff whole; or the agreement is not enforceable and thus Plaintiff is free to contract his land holds to other lessees. [*Id.* at 5-6]. This court agrees that Plaintiff has not stated a claim for negligent misrepresentation or for fraud as to either Bakken or Northern for the reasons discussed below.

First, Plaintiff has failed to allege that CORE and Bakken are responsible for false representations. *See generally* [#1]. The exhibits attached to Plaintiff's Complaint tend to support, rather than contradict, the following factual allegations: CORE and Bakken had the authority to negotiate on behalf of Northern; Northern was interested in obtaining a lease on Plaintiff's mineral interest; and CORE and Bakken confirmed that Northern would remit payment in 2015. The email exchange between Bakken and CORE suggests that these two entities were acting pursuant to Northern's authority and with the belief that Northern sought to enter into a contract with Plaintiff at the time Plaintiff executed the Oil and Gas Leases. [#1-1 at 1-5, 36-55]. *Cf. Weigand v. Montana Land and Real Estate Investments, Inc.*, 724 P.2d 194, 196 (Mont. 1986) (affirming dismissal of complaint for failure to contain specific allegations that defendant provided plaintiffs false information with respect to their offer, noting that "[t]he

complaint merely alleges, in very broad terms, that negligent misrepresentation occurred."). To the extent Northern no longer intended to be bound by the Oil and Gas Leases, or withdrew Bakken's authority, after Plaintiff executed the agreement, those subsequent events cannot form the basis of a negligent misrepresentation claim in Montana. *Krone*, 197 Mont. at 387 (finding that Plaintiff must allege that the defendant made a representation as to a *past* or *existing* material fact). *See also Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 692 (9th Cir. 2011) ("To be actionable, a statement or omission must have been misleading at the time it was made; liability cannot be imposed on the basis of subsequent events.") (citations omitted).

Second, Plaintiff has not alleged specific facts that support a conclusion that Bakken and CORE made these representations without any reasonable ground for believing them to be true, or that they knew the representations were false. Plaintiff's conclusory statement that "CORE, for itself and on behalf of Bakken and Northern, made promises regarding Northern's intent to be bound by the Leases with the then-present intention that Northern would not fulfill them," [#1 at ¶ 54], is not supported by the particularity required under Rule 9(b) and cannot rebut the exhibits offered as part of Plaintiff's pleading. *See Giarrantana v. Naddy*, 129 Mont. 154, 159 (1954) ("Fraud is a thing to be described, rather than defined…The courts therefore should content themselves with determining from the facts of each case whether fraud does or does not exist."). In the Third Claim for Relief for Negligent Misrepresentation Regarding Scope of Authority and Fifth Claim for Negligent Misrepresentation Regarding Promised Future Performance, Plaintiff fails altogether to allege the knowledge component that CORE or Bakken made representations without any reasonable ground for believing the representations to be true. *See* [#1 at ¶¶ 41-49, 59-67]. Plaintiff's generic assertion in his Response that Bakken either had knowledge at the

relevant time that Northern did not intend to be so bound, or reasonably should have known that Northern did not intend to be so bound, is insufficient to save the pleading and is furthermore contradicted by the emails exchanged between the Parties as attached by Plaintiff. *See* [#38 at 5].[7]

Third, as to the specific language of § 27-1-712(2)(d), under Montana law "the mere making of a promise which the promisor fails to keep is not actionable fraud." *Avco Financial Services v. Foreman-Donovan*, 772 P.2d 862, 864 (Mont. 1989) (citation omitted). Plaintiff must allege that the person or entity making the promise had no intention of performing it. Mont. Code. Ann. § 27-1-712(2)(d). Plaintiff has not asserted any specific factual allegations that Northern did not intend to sign the leases at the time they were presented to Plaintiff for his signature, nor to demonstrate that Northern made fraudulent representations once it determined that it would not follow through on the leases. *See Northwestern Corp. v. Economic Research Group, Inc.*, No. CV–08–04–BLG–RFC, 2008 WL 2532206, at *8 (D. Mont. June 24, 2008) (granting motion to dismiss as to claim for deceit for failure to "provide particular facts concerning the 'time, place, persons, statements made, [and] explanation of why or how [defendant's representations or]…statements are false or misleading.") (citation omitted). *Cf. Dodds v. Gibson Products Co. of Western Montana,* 593 P.2d 1022, 1025-26 (Mont. 1979) (affirming that plaintiff's allegations supported his theory of fraud because plaintiff alleged that defendant "continually promised that the water and sewer lines would be installed in time for the

---

[7] Plaintiff cites *Bokma Farms, Inc. v. State of Montana,* 14 P.3d 1199, 1200-1201 (Mont. 2000) for the proposition that "negligent misrepresentation may occur where a party makes a promise to take a future act, yet reasonably should have known that such promise would not be carried out." [#38 at 4]. Yet, Plaintiff does not allege that Bakken or CORE promised to take a future act and does not describe the act they failed to take. Indeed, these Defendants merely negotiated the Oil and Gas Leases on Northern's behalf.

restaurant's opening when he knew, in fact, that this was impossible because he had not filed a petition for a [special improvement district]").

Finally, Plaintiff alleges he relied on Bakken and CORE's representations for the purpose of leasing his oil and gas interests. The agreement he ultimately signed and executed, the Oil and Gas Leases, provided for exactly that—the lease of his land interests. [*See* #1-1 at 7-34]. In other words, he entered into an agreement whose terms were identical to the ones represented to him by Bakken and CORE. The fact that the party who sought to lease the interests changed its mind after Plaintiff had executed the agreement does not alter this fact.

D. Northern Motion to Dismiss

Plaintiff's misrepresentation and fraud claims as to Northern are also insufficient for the reasons stated above as to Bakken. Assuming an agency relationship existed between Northern and CORE by way of Bakken, Plaintiff has not alleged a false representation made by CORE and/or Bakken to him, or that Bakken and CORE made certain representations to him without any reasonable ground for believing them to be true or with knowledge of their falsity.

To the extent Plaintiff alleges that Northern is liable for its own fraudulent acts, *i.e.* by indicating it would pay under the Oil and Gas Leases and then failing to pay, "neither the making of a promise to pay money in the future nor the failure to pay constitutes actionable fraud." *Davis v. Church of Jesus Christ of Latter Day Saints*, 852 P.2d 640, 644 (Mont. 1993) (citation omitted), *overruled on other grounds, Giko v. Permann,* 331 Mont. 112, 130 P.3d 155 (Mont. 2006). The only other promise Plaintiff alleges Northern made was to agree to a four-year lease rather than a three-year lease. The leases attached to the Complaint indicate that the agreement included a four-year term. *See, e.g.,* [#1-1 at 7]. Indeed, the length of the contract is not the

16

apparent reason for Northern's decision not to proceed with the agreement, but rather the overall climate of the oil and gas market in December 2014. *See* [#1-1 at 51]. Finally, Plaintiff has not alleged what actions Northern took to willfully induce Plaintiff to alter his position regarding his oil and gas interests. *See* Mont. Code. Ann. § 27-1-712(1).[8]

Accordingly, I find that Plaintiff has not stated a claim for negligent misrepresentation or fraud as to Bakken or Northern as Northern's change of position with regard to payment under the Oil and Gas Leases, standing alone, is insufficient to state a claim for fraud under Montana law. In so finding, the court does not pass on whether such conduct constitutes a breach of contract, a claim Plaintiff separately asserts and for which Northern has filed an Amended Answer. *See* [#44].

## CONCLUSION

For the foregoing reasons, this court respectfully **RECOMMENDS** that:

1. Defendant Northern Oil & Gas, Inc.'s Motion to Dismiss Plaintiff's Fourth and Fifth Claims for Relief [#21] be **GRANTED**; and

2. Defendant Bakken Oil, LLC's Motion to Dismiss [#25] be **GRANTED**.[9]

---

[8] Although Plaintiff does not assert a claim for constructive fraud, for the sake of completeness this court notes that Plaintiff's allegations would not support such a claim. Under Montana law, "[c]onduct constituting constructive fraud consists of 'any breach of duty, which, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under him by misleading another to his prejudice....'" *In re Potts,* 158 P.3d 418, 528–29 (Mont. 2007) (quoting Mont. Code Ann. § 28–2–406). Plaintiff has not described as to any Defendant a duty, or how the breach of that duty advantaged the Defendant responsible for the breach.

[9] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and

DATED: January 5, 2016                              BY THE COURT:

                                                                   s/Nina Y. Wang_____
                                                                   United States Magistrate Judge

---

recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).