**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Case No. 15-cv-00962-RM-NYW

BRENT J. MORSE,

      Plaintiff,

v.

BAKKEN OIL, LLC, *et al.*,

      Defendants.

---

**OPINION AND ORDER**

---

Pending before the Court is the January 5, 2016 Report and Recommendation of U.S. Magistrate Judge Nina Y. Wang ("the R&R") (ECF No. 51).  Also pending is plaintiff Brent Morse's ("plaintiff") motion for leave to amend complaint ("the motion to amend").  (ECF No. 54.)

1.    <u>**The Original Complaint**</u>

In the complaint, plaintiff raised the following claims: (1) breach of contract against defendant Northern Oil & Gas, Inc.'s ("Northern"); (2) breach of the implied warranty of authority against defendant CORE Consulting, LLC ("Core"); (3) "negligent misrepresentation regarding scope of authority" against defendant Bakken Oil, LLC's ("Bakken") and Core; (4) "deceit based on fraud regarding promised future performance" against Northern, Bakken, and Core; and (5) "negligent misrepresentation regarding promised future performance" against Northern, Bakken, and Core.  (ECF No. 1 at 5-11.)

2.      **The R&R**

In the R&R, the Magistrate Judge recommended that the Court: (1) grant Northern's motion to dismiss (ECF No. 21) the fourth and fifth claims of the complaint; and (2) grant Bakken's motion to dismiss (ECF No. 25) the complaint.  (ECF No. 51 at 17.)  The R&R also specifically advised the parties that written objections were due within 14 days after service of the same.  (*Id*. at 17 n.9.)  The Magistrate Judge warned the parties that failure to file specific objections may waive *de novo* review of the R&R.  (*Id*.)

On January 19, 2016, plaintiff filed an Objection to the R&R ("the objection") on one limited ground: that the R&R not be interpreted as recommending dismissal without leave to amend his complaint.  (ECF No. 53 at 1-2.)  In other words, plaintiff raises no objection to the Magistrate Judge's recommendation to grant the motions to dismiss.  As a result, the Court ADOPTS the recommendations to GRANT Northern and Bakken's motions to dismiss. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) ("In the absence of timely objection, the district court may review a magistrate's report under any standard it deems appropriate.").[1]  Below the Court discusses whether to sustain plaintiff's objection as to whether he should be allowed leave to amend the complaint.

3.      **The Motion to Amend**

a.      **Background Material**

Since filing the objection, plaintiff has filed an actual motion to amend (ECF No. 54), along with red-lined and clean versions of the proposed amended complaint (ECF Nos. 54-1-2).  Bakken has filed a response to the motion to amend, and plaintiff and Northern have both filed replies.  (ECF

---

[1] However, to the extent inconsistent with the findings and conclusions herein, the Court does NOT adopt the factual findings and conclusions of law contained in the R&R.

2

Nos. 58-60.)  Essentially, Bakken opposes leave to amend, while plaintiff and Northern desire it. In order to understand this moderately odd alignment of the parties, it is necessary to know a few of the underlying alleged facts.

First, in the original complaint, plaintiff alleged that Bakken was an agent of Northern with respect to the acquisition of oil and gas rights in Montana, and Core was an agent of Bakken.  (ECF No. 1 at ¶¶ 10, 11.)  Second, after Core contacted plaintiff about obtaining oil and gas leases on plaintiff's real property, Core and plaintiff embarked upon several months of negotiations that ultimately resulted in Northern accepting a counterproposal from plaintiff with respect to the oil and gas leases.  (*Id*. at ¶¶ 12-16.)  This allegedly happened in September 2014.  (*Id*. at ¶ 16.)  Third, at some point in the middle of November, after plaintiff had agreed to a Northern-proposed modification, plaintiff received from Core, executed, and returned formal leases for his interests. (*Id*. at ¶¶ 19-21.)  Fourth, after Northern informed Bakken that Northern would "close" on the oil and gas leases in 2015, Core confirmed to plaintiff that Northern's lease payments would begin in early 2015.  (*Id*. at ¶¶ 23, 24.)  Finally, having received no payment by mid-January 2015, plaintiff contacted Core and Bakken, and was informed that Northern did not intend to honor the leases that plaintiff had executed.  (*Id*. at ¶¶ 25-27.)

In making these factual allegations, plaintiff relied upon certain exhibits attached to the original complaint, containing, *inter alia*, emails between Bakken and Northern.  (*See id*. at ¶¶ 22, 23, 27; ECF No. 1-1.)  Plaintiff presumably believed that these emails buttressed his first claim for relief in light of Northern's Vice President of Operations' statement that Northern would "close in 2015" on the oil and gas leases.  (*See* ECF No. 1-1 at 42.)  The Magistrate Judge, though, found, at

least with respect to the third, fourth, and fifth claims in the original complaint, a little less support

than the plaintiff may have intended.  Specifically, the Magistrate Judge found that:

> The exhibits attached to [the complaint] tend to support, rather than contradict, the following factual allegations: Core and Bakken had the authority to negotiate on behalf of Northern; Northern was interested in obtaining a lease on [p]laintiff's mineral interest; and CORE and Bakken confirmed that Northern would remit payment in 2015.

In the motion to amend, plaintiff asserts that evidence obtained during discovery effectively

casts the above-referenced emails in a new light.  (*See* ECF No. 54 at 2-3.)  According to plaintiff,

after the deadline to amend pleadings, "Northern stated under oath that it terminated Bakken's

agency relationship in April 2014, and never authorized Bakken (or CORE) to negotiate or enter into

lease agreements on its behalf with [plaintiff]."  (*Id.* at 3.)  Plaintiff appears to contend that, because

this discovery was received after the deadline to amend had passed, under Fed.R.Civ.P. 16(b)

("Rule 16(b)"), "good cause" exists to modify the deadline to amend.  (*See id.*)  Plaintiff further

argues that, under Fed.R.Civ.P. 15(a)(2) ("Rule 15(a)(2)"), justice requires that leave to amend be

allowed because he seeks only to amend the complaint based upon information obtained during

discovery, the discovery cut-off day is not until March 31, 2016, and the amended claims will not

prejudice or surprise any party.  (*Id.* at 3-4.)

The proposed amended complaint maintains some, alters others, and removes one of the

claims raised in the original complaint.  Specifically, the first (against Northern) and second (against

Core) claims for relief remain the same.  (*Id.* at 5-7.)  Changes begin with the third claim.  That claim

would now be solely against Bakken for alleged fraudulent misrepresentation.  (*Id.* at 7-10.)  The

fourth claim is also changed.  That claim would also now purely be against Bakken for alleged

negligent misrepresentation.  (*Id.* at 10-16.)  Both the third and fourth claims would be premised

upon Northern's discovery responses that it terminated its relationship with Bakken in April 2014. (*Id*. at ¶¶ 53, 72.)  The fifth claim for relief has been removed from the proposed causes of action. (*Id*. at 12.)

In response, Bakken argues that plaintiff should not be allowed to file an amended complaint because (1) plaintiff was aware of the information upon which the amended complaint relies "well before the deadline to amend pleadings," and (2) amendment would be futile.  (ECF No. 58.) Bakken argues that plaintiff was aware of Northern's position viz a viz the alleged termination of the agency relationship by no later than July 31, 2015, as that position was contained in Northern's statement of claims and defenses in the Scheduling Order.  (*Id*. at 4.; *see also* ECF No. 46 at 6.) With regard to the futility argument, Bakken argues that, even amended, the allegations in the proposed complaint do not refute the clear content of the attached emails indicating that an agency relationship existed between Bakken and Northern by at least November 2014.  (ECF No. 58 at 5-7.) Bakken further argues that amendment would be futile because, even if Bakken's representations were false, they were insignificant on the ground that plaintiff entered into an agreement with terms identical to the ones Bakken represented.  (*Id*. at 8-9.)

In reply, plaintiff argues that his motion to amend is not untimely because, although the Scheduling Order "may have offered some guidance regarding Northern's assertions," it was not until he received Northern's discovery responses that "he was certain he had additional specific material facts that he could allege."  (ECF No. 59 at 2.)  Plaintiff next argues that the proposed amended complaint adequately pleads that he suffered damage.  (*Id*. at 3-4.)  Although plaintiff does not appear to contest that the proposed complaint fails to specifically allege that the leases he signed

were not valid, he argues that, construing the allegations in a light most favorable to him, it can be "reasonab[ly] infer[red]" that a sufficient allegation was made. (*See id.*)

Northern has also filed a reply to Bakken's response. (ECF No. 60.) Northern notes its support for the motion to amend, and re-asserts its position that, after April 2014, Bakken was no longer its agent. (*Id*. at 2 & n.1.) Northern also provides further clarification of its position, asserting that, post-April 2014, Bakken attempted to "shop" deals to Northern, such as the ones with plaintiff, and in doing so, the parties were independent of and effectively negotiating with each other. (*Id*. at 2-3.) Northern contends that, because the primary focus of the original complaint was the first claim for breach of contract, the facts supporting its position were absent, and the proposed amended complaint merely attempts to add clarity to the parties' relationships. (*Id*. at 3.)

**b.      Legal Standard**

"After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under [Rule 16(b)(4),] and (2) satisfaction of the Rule 15(a) standard." *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).

"Good cause" under Rule 16(b)(4) may be met if a plaintiff learns new information from discovery. However, "[i]f the plaintiff knew of the underlying conduct but simply failed to raise [his claims] … the claims are barred." *Id.*

Pursuant to Rule 15(a)(2), a party may amend its pleading with the opposing party's consent or leave of court, with the court "freely giv[ing] leave when justice so requires." Fed.R.Civ.P. 15(a)(2). This standard means that leave to amend is not justified when there has been "undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure

deficiencies by amendments previously allowed, or the futility of amendment." *Frank v. U.S. West,*

*Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).  "Untimeliness alone is a sufficient reason to deny leave

to amend, especially when the party filing the motion has no adequate explanation for the delay."

*Id*. (citations omitted).  "A proposed amendment is futile if the complaint, as amended, would be

subject to dismissal."  *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007) (quotation and

internal quotation omitted).

      **c.**    <u>**Discussion**</u>

      Bakken raises two principal reasons for why leave should not be granted: (1) good cause does

not exist under Rule 16(b)(4) because plaintiff knew of Northern's position viz a viz the agency

relationship by July 31, 2015; and (2) amendment would be futile because (a) the emails attached

to the proposed complaint disprove plaintiff's claims of misrepresentation, and (b) plaintiff fails to

allege that he did not enter into an agreement with Northern.  (ECF No. 58.)  The Court will address

each argument in turn.

      **i.**    <u>**Rule 16(b)(4)**</u>

      The Court finds that good cause exists under Rule 16(b)(4) to modify the deadline to amend

pleadings.  Bakken accurately complains that, in the Scheduling Order, Northern asserted the

substance of what forms the basis of the factual changes in the proposed amended complaint.

Specifically, Northern asserted that "Bakken was contracted by Northern to renew oil and gas leases,

but that relationship ended in April of 2014.  After that time, Bakken, through CORE, tried to 'shop'

the Plaintiff's lease to Northern."  (ECF No. 46 at 6.)  Moreover, arguably, plaintiff was aware of

Northern's position in this regard by July 24, 2015, when the parties filed a Proposed Scheduling

Order, containing the same assertions.  (ECF No. 42 at 6.)

Nonetheless, the Court does not find that either the proposed or actual Scheduling Order put plaintiff on notice that he might need to amend his complaint.  In *Birch v. Polaris Indus., Inc.*, the Tenth Circuit concluded that the district court did not abuse its discretion in denying a motion to amend, where (1) the plaintiffs' expert knew of pertinent facts in October 2013, (2) the defendant filed a pleading in April 2014 alleging pertinent facts, (3) at the defendant's deposition in May 2014, the defendant testified as to certain pertinent facts, and (4) in June 2014, the pertinent information was revealed after the disassembly of the product at issue.  ___ F.3d ___, 2015 WL 9310564, at *8-9 (10th Cir. Dec. 23, 2015).  The Tenth Circuit stated that all of these events put the plaintiffs on notice that they may need to amend their complaint, yet they did not move to amend until four months after the June 2014 disassembly.  *Id*. at *9.

Here, the Scheduling Order did not put plaintiff on sufficient notice that he may need to amend the complaint.  Unlike the plaintiffs in *Birch*, the Scheduling Order was the only event that indicated to plaintiff the facts he subsequently set forth in the proposed amended complaint.  Bakken cites no support, though, for the contention that a plaintiff should amend his or her complaint based solely on the assertions made by another defendant in a proposed scheduling order, which were simply Northern's statement of its affirmative defenses to the same complaint and could have been subsequently amended.  (*See* ECF No. 46 at 6); *cf. Smith v. Argent Mortg. Co.*, 331 F. App'x 549, 556 (10th Cir. 2009) (concluding that a statement of undisputed fact in a pre-trial scheduling order was not binding on a party, where the party later explained that the fact was actually disputed and the fact was not contained in the final pre-trial order).  Therefore, the Court can discern no fault in plaintiff waiting for discovery to support, or fail to support, Northern's assertion that no agency relationship existed after April 2014.  As a result, in this instance, plaintiff learned from discovery

of the information contained in his proposed amended complaint, and thus, there is good cause to modify the deadline to amend pleadings to the extent that the filing of the proposed amended complaint was not untimely.  *See Gorsuch*, 771 F.3d at 1240.

### ii.    Futility Under Rule 15(a)(2)

Bakken contends that amendment would be futile for two reasons: (1) the emails referenced in the proposed amended complaint, which are the same as the ones attached to the original, establish that plaintiff's allegations of misrepresentation are untrue; and (2) even if the allegations are true, plaintiff has failed to allege that he suffered any injury in entering into the leases.  (ECF No. 58 at 5-9.)

First, in light of Northern's argument that its agency relationship with Bakken terminated at the end of April 2014, the Court disagrees that the emails prove *as fact* that the allegations of misrepresentation are untrue.  The Court acknowledges that the Magistrate Judge found that the emails supported the position that Core and Bakken had authority to negotiate on Northern's behalf.  (ECF No. 51 at 13.)  However, at no point was the Magistrate Judge presented with the alleged fact that Northern had terminated that authority by the end of April 2014, and, thereafter, Bakken was allegedly "shopping" plaintiff's leases to Northern.  Notably, the Magistrate Judge's factual background begins in *August* 2014.  (*Id*. at 2-3.)  Thus, the Magistrate Judge quite rightly did not construe the emails in a light that the subject leases were being "shopped."

Construed in that fashion, it is arguable that the statements of Northern's representative in those emails can support an allegation that Bakken was shopping plaintiff's leases to Northern.  Before beginning, the Court notes that there is no 'smoking gun' in the emails in that nowhere is it expressly stated that Bakken either was or was not an agent of Northern.  The impression that such

a relationship existed or did not can only be inferred from the words used in the emails.  The Court

starts with what appears to be the first email sent from Joshua Cole ("Cole"), a Manager at Bakken,

to Adam Dirlam ("Dirlam"), the Vice President of Operations at Northern.  In that email, dated

August 12, 2014, Cole asked Dirlam if he was "interested" in any of the listed leases in Montana.

(ECF No. 1-1 at 55.)  Construing the term "interested" and the entire email in the light most

favorable to plaintiff, a reasonable jury could infer that Cole was attempting to shop the leases listed.

There is no indication in the email that the leases were obtained or being offered in connection with

a continuing course of agency business between Bakken and Northern, that Bakken was employed

by Northern, or that Northern had held Bakken out to plaintiff as its agent.  *See Semenza v. Kniss*,

189 P.3d 1188, 1191 (Mont. 2008) (explaining that "'[a]n agency is either actual or ostensible.  An

agency is actual when the agent is really employed by the principal.  An agency is ostensible when

the principal … causes a third person to believe another to be the principal's agent ….'") (quoting

Mont. Code Ann. § 28-10-103(1)).[2]  Obviously the email chain between Cole and Dirlam may not

have initiated with the August 12, 2014 email, and, in that respect, the Court will assume that the

record is far from complete, particularly with regard to what may have transpired in April 2014, but

based upon the emails submitted so far, it is possible to infer that the leases in the email were being

shopped to Northern.

    Next, when construed favorably to plaintiff, the remaining emails do not contradict

Northern's further assertion that, in shopping plaintiff's leases, Bakken and Northern were

"negotiating" the leases, and thus, were not operating as agent and principal.  (*See* ECF No. 60 at 3.)

---

[2] None of the parties objected to the Magistrate Judge's determination that Montana law applies in this diversity case.  (*See* ECF No. 51 at 7-9.)  Thus, the Court will apply that law in this instance.

10

For example, Dirlam's statement on August 13, 2014 that Northern could "do $1550 @ 80% for three years here" (ECF No. 1-1 at 54), can easily be construed as part of a negotiation. As can Dirlam's statement that Northern would take the leases for "four years" (*id*. at 53), especially in light of subsequent emails. After what appears to have been some confusion over whether plaintiff wanted to move forward with deal in 2014 or merely wanted to get paid in 2015 (*id*. at 52-53), Dirlam stated that Northern would "close in 2015." (*Id*. at 51.) However, Dirlam then said "please send over the lease form that was used as I don't believe we ever reviewed or signed off on unless [I'm] mistaken." (*Id*.) Depending on whether any one at Northern had reviewed and signed off on the leases, and on the inferences read into the entire context of Northern and Bakken's relationship, this email may support Northern's argument that Bakken had no authority to send leases out in Northern's name without Northern reviewing and approving the leases. (*See* ECF No. 60 at 3.)

The purpose of this review is not to establish facts, or even inferences from facts, against any of the parties. The purpose is purely to show that there appear to be many disputed issues related to the emails submitted with the original complaint, which are not appropriate for resolution at the motion-to-dismiss stage. *See Colorado Farm Bureau Fed'n v. U.S. Forest Serv.*, 220 F.3d 1171, 1173 (10th Cir. 2000) ("When considering a motion to dismiss, [a court] must construe the complaint in favor of the complaining party and assume the truth of all factual allegations.").

This leaves Bakken's argument that amendment is futile because plaintiff fails to allege that he did not enter into a contract with Northern. (ECF No. 58 at 8-9.) Bakken cites to the Magistrate Judge's finding that plaintiff entered into an agreement with terms identical to the ones represented by Bakken and Core. (*Id*. at 8 (citing ECF No. 51 at 16)). It is true that the Magistrate Judge found that plaintiff entered into leases on the terms represented by Bakken and Core. (ECF No. 51 at 16.)

However, it appears that finding was based upon the Magistrate Judge's earlier finding that an agency relationship existed between Bakken and Northern, and thus, plaintiff entered into leases with Northern. (*See id*. ("The fact the party who sought to lease the interests changed its mind after Plaintiff had executed the agreement does not alter this fact.")). As discussed *supra*, though, that is not necessarily the case in light of the new factual allegations in the proposed amended complaint. Moreover, nowhere in the R&R's short discussion of this issue, does it mention that the Magistrate Judge's finding is based upon a failure to plead injury or the lack of a valid lease. (*See id*.) Thus, to the extent that Bakken contends that the Magistrate Judge found a *pleading* deficiency in this regard, the R&R does not support it.

Nonetheless, the Court agrees with Bakken that the proposed amended complaint does fail to specifically allege that plaintiff did not enter into valid leases. However, the import, if not the precise wording, of plaintiff's allegations is sufficiently clear. Specifically, plaintiff alleges that, if a jury finds Bakken lacked authority, then Bakken knew or should have known that its statements or representations were false. (ECF No. 54-2 at ¶¶ 55, 74.) Construing the complaint in plaintiff's favor, "statements" and/or "representations" can be construed to encompass all of Bakken's statements, including the alleged statement that Northern had agreed to be bound by the leases. From this, if such a statement was false, it can also be construed that Northern had not agreed to be bound, and thus, the leases were not valid and binding, as only one party had agreed to them. In addition, plaintiff alleges that Bakken intended that he rely on its representations in determining whether "enforceable leases existed," and that he relied on the representations in executing the leases and ceasing to market his properties. (*Id*. at ¶¶ 56-57, 75-76.) Nothing more was necessary for plaintiff to allege his reliance on Bakken's statements. *See Whitehead v. Shafer*, 295 F. App'x 906,

908 (10th Cir. 2008) ("The purpose of a modern complaint is to give opposing parties fair notice of the basis of the claim against them so that they may respond to the complaint, and to apprise the court of sufficient allegations to allow it to conclude, if the allegations are true, that the claimant has a legal right to relief.") (quotation omitted); *see also Walters v. Luloff*, 176 P.3d 1034, 1038 (Mont. 2008) (explaining that a claim of negligent misrepresentation must establish "(1) that the defendant made a false representation as to a past or existing material fact without any reasonable ground for believing it to be true … with the intent to induce the plaintiff's reliance; and (2) that the plaintiff, unaware of the falsity of the representation, justifiably relied on the representation and suffered damage as a result of that reliance.").

Having rejected Bakken's reasons for denying leave to amend, and discerning no other reason why justice would not require leave, the Court SUSTAINS plaintiff's objection to the R&R to the extent that he shall have leave to amend the complaint, and GRANTS the motion to amend.

**4.**     **Conclusion**

For the reasons set forth herein, the Court:

(1)     ADOPTS the R&R (ECF No. 51) to the extent that:

    (a)     Northern's motion to dismiss (ECF No. 21) is GRANTED; and

    (b)     Bakken's motion to dismiss (ECF No. 25) is GRANTED;

(2)     SUSTAINS plaintiff's objection (ECF No. 53) to the R&R to the extent that plaintiff shall have leave to amend the complaint; and

(3)     GRANTS plaintiff's motion for leave to amend complaint (ECF No. 54).

The Clerk is ORDERED to file a copy of the proposed amended complaint (ECF No. 54-2) as a separate docket entry. In addition, the Clerk shall file a copy of ECF No. 1-1 as an exhibit to the amended complaint.

Finally, the Court notes that since the beginning of this case, Core, a corporation, has been unrepresented. Although Core's managing member Cori Schock ("Ms. Schock") filed an Answer to the complaint, the Magistrate Judge struck the same and specifically warned Ms. Schock that Core must be represented by an attorney to appear in federal court, and that failure to obtain such representation may result in entry of default. (*See* ECF No. 31.) The Magistrate Judge gave Core until July 22, 2015 to obtain counsel (*id*.), which, evidently, Core has not done. The Court further notes that, in the amended complaint, Core remains a defendant in this action, and is also a cross-defendant with respect to Northern's crossclaim. (*See* ECF No. 44 at 23, 26-28.) In the R&R, the Magistrate Judge remarked that Core remained unrepresented, and also that plaintiff has failed to move for entry of default. (ECF No. 51 at 5.)

The Court will not allow this situation to continue. Either Core must obtain counsel to represent it in this proceeding, or Core will either have entry of default entered against it or be dismissed. As a result, Core is ORDERED to obtain counsel to represent it in this action **on or before March 21, 2016**. Should Core fail to obtain representation by counsel, Core is ORDERED TO SHOW CAUSE **on or before March 21, 2016** why entry of default should not be entered against it. Failure to respond to the Order to Show Cause WILL result in entry of default.

**SO ORDERED.**

DATED this 7th day of March, 2016.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge

14